Wm. H. Heinemann Creameries, Inc., Appellant, vs.
Village of Kewaskum and another, Respondents.

*April 10—May 7, 1957.*

638

For the appellant there was a brief by *Marth & Marth* of West Bend, and oral argument by *William J. Marth*.

For the respondents there was a brief by *O'Meara & O'Meara* of West Bend, and *K. Wm. Haebig* of Kewaskum, and oral argument by *Stephen M. O'Meara*.

CURRIE, J. The sole ground of attack voiced in the plaintiff's complaint against the validity of the special assessment is that the plaintiff received no benefit therefrom. The plaintiff alleges that it received no benefit because the sewerage-service charges comprising the same were for the period of October 1, 1954, to September 30, 1955, and the new sewage-treatment plant was not put into operation until October 1, 1955.

Sub. (1) of sec. 66.076, Stats., provides that, in addition to other methods whereby a village may finance improvements to a sewage system, including a treatment plant, is that of imposing "sewerage-service charges." Sub. (4) of such section further provides that the governing body of the municipality may establish such charges either to pay the whole or any part of the costs of such an improvement, or to pay all or part of the principal and interest of any indebtedness incurred for the same. Sub. (5) permits the imposing of classified charges taking into consideration the volume of water passing into the sewage system, the character of the sewage or waste discharged, and the use made of the sewage system including the disposal plant. Sub. (7) requires that such charges be collected and taxed, and be a lien upon the property served, in the same manner that water rates are under the provisions of sec. 66.069 (1) or sec. 66.071 (1) (e). Sub. (9) makes the public service commission the proper agency to pass upon any complaint that the service charges are unreasonable or unjustly discriminatory.

During the year embraced by the attacked assessment all of the industrial wastes of the plaintiff were discharged by it into the village sewage system. No greater or additional sewage service, in so far as ridding plaintiff's plant of its industrial wastes is concerned, was furnished to the plaintiff after the completion of the new treatment plant on October 1, 1955. The only change effected by such new plant is that now the plaintiff's sewage is adequately treated before being discharged into the river, while before it was not because of the inadequacy of the prior treatment plant.

The plaintiff's brief cites a number of decisions of this court to the effect that a special assessment, which is not based upon benefits received by the assessed property, is unconstitutional and void. The reason why a special assessment in excess of benefits is unconstitutional was stated by

the United States supreme court in *Norwood v. Baker* (1898), 172 U. S. 269, 279, 19 Sup. Ct. 187, 43 L. Ed. 443, as follows:

"In our judgment, the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, *to the extent of such excess,* a taking, under the guise of taxation, of private property for public use without compensation."

We fail to see how such principle has any application to the instant case. We are not here concerned with the amount of the questioned assessment because the legislature has constituted the public service commission as the exclusive tribunal to pass on that issue. Our only jurisdiction is to determine its legality, and, under the sole issue raised by the plaintiff's complaint, we must uphold its validity if plaintiff's property benefited from the improvement.

While the plaintiff's property had not benefited from the improvement during the year in which the questioned sewerage-service charges were imposed, there can be no question but what it did benefit immediately upon the new treatment plant being placed in operation on October 1, 1955. For one thing, it was relieved thereby from the necessity of constructing separate treatment facilities which otherwise would have been required of it by the committee on water pollution and the state department of public health.

The case, therefore, seems to boil down to the narrow issue of whether present benefit is an essential prerequisite, or may future benefit be sufficient to sustain the assessment.

In *Dickson v. Racine* (1886), 65 Wis. 306, 27 N. W. 58, the court had before it a special assessment for the construction of a street. Witnesses had testified that the mere opening of the street, without the construction of a bridge across the river at the end of the street, would confer no benefit upon plaintiff's lots abutting on the street. The reason

for the opening of the street was to make an approach to a bridge, the construction of which was contemplated by the defendant city in the near future, and the court found it was almost a public necessity to have a bridge there. It was there held that the jury might consider the enhancement in value of plaintiff's lots due to this future construction of the bridge in determining the amount of benefits to be assessed against such lots.

We deem *Dickson v. Racine, supra,* to be authority for the principle that future benefits may be considered in sustaining the validity of a special assessment. However, inasmuch as the construction of the bridge had not been authorized at the time the special assessment was levied, such case in this respect is contra to the weight of authority as evidenced by an annotation in 28 L. R. A. (N. S.) 669. This is because benefits arising from improvements which depend upon *contingent* future action of public authorities should not be considered in assessing benefits. However, in the instant case no such contingency is present because the improvement had been authorized by the village board and the contract let prior to the time the sewerage-service charges were imposed.

The author of the annotation in 28 L. R. A. (N. S.) 669, lays down the test that the benefits necessary to sustain a special assessment "must be substantial, certain, and capable of being realized within a reasonable time." Likewise, 14 McQuillin, Mun. Corp. (3d ed.), pp. 125–127, sec. 38.33, states, "The fact that property will receive no present benefit in the sense of actual use of the improvement will not defeat the assessment if benefits are sure to be realized in a reasonable time in the future."

It is our considered judgment that the instant assessment meets the test laid down by the foregoing authorities because the benefit of the improvement to the plaintiff's property

was sure to be realized within a reasonable time in the future from the time when the questioned sewerage-service charges were imposed.

*By the Court.*—Judgment affirmed.